UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **ANASTASIA SINEGAL** | : | **DOCKET NO. 2:18-cv-1143** |
| **VERSUS** | : | **JUDGE SUMMERHAYS** |
| **LAKE CHARLES POLICE DEP'T, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court are two unopposed Motions to Dismiss [docs. 7, 12] filed under Rule 12(b)(6) by, respectively, (1) defendants Mallory Bellard and Golden Nugget, LLC ("Golden Nugget") (collectively, "Golden Nugget defendants"), and (2) defendants Donald Dixon, Joshua Ewing, Princeton Jackson, and the Lake Charles Police Department ("LCPD") (collectively, "municipal defendants"). The motions relate to the pro se complaint filed by plaintiff Anastasia Sinegal. They have been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

**I.**
**BACKGROUND**

This action arises from an alleged encounter between Sinegal, Golden Nugget employee Mallory Bellard, and LCPD officers Jackson and Ewing, at the Golden Nugget Casino in Lake Charles, Louisiana, on or about August 31, 2017. Doc. 1. Sinegal asserts that she was a regular customer at the casino and had reported a machine to the Louisiana Board Gaming Association. *Id.* at 3–4. The next time she returned to the casino, Golden Nugget employees informed her that she was trespassing and was banned from the premises for six months. *Id.* Sinegal states that she

and Golden Nugget security supervisor Mallory Bellard agreed to call the LCPD, and that she (Sinegal) believed that the LCPD would help "put some clarity on the situation." *Id.* Instead, she alleges, LCPD officers Jackson and Ewing[1] arrived and then used unnecessary force to subdue and restrain her, even after she tried to explain to the officers that she had a concussion and back and neck injuries and that she had never been served with papers banning her from Golden Nugget. *Id.* at 4–14. Sinegal states that she asked Bellard to confirm her medical condition because Bellard had seen her in a neck brace, but that Bellard responded, "I don't know anything." *Id.* at 5–6, 10. She also alleges that "Golden Nugget Security" told the officers that Sinegal "already [had] a charge for being banned from a casino and resisting arrest," which Sinegal maintains is a mischaracterization of her arrest history.[2] *Id.* at 5. Finally, she alleges that the officers had turned off their body cameras and that she was recording the incident but that Corporal Jackson grabbed her cell phone and deleted the video. *Id.* at 4, 6. Sinegal maintains that she suffered pain, injury, mental anguish, and emotional distress from the encounter, and that defendants are liable to her under Louisiana tort law and federal civil rights law. *Id.* at 15–19.

Both sets of defendants answered the complaint and then filed Motions to Dismiss under Rule 12(b)(6). Docs. 6, 11 (answers); docs. 7, 12 (Motions to Dismiss). Sinegal has not responded to either motion and her time for doing so has elapsed. Accordingly, the motions are regarded as unopposed and are now ripe for review.

---

[1] On the second page of her complaint, Sinegal identifies Ewing as a security guard at Golden Nugget. Doc. 1, p. 2. Her later allegations about actions of LCPD officers, coupled with the municipal defendants' identification of Ewing as an LCPD officer in the answer [doc. 11, p. 1] indicate that Sinegal's initial statement about Ewing's role was a mistake.

[2] Sinegal states that the prior ban was because of a lawsuit she had filed after falling at a casino and that the resisting arrest charge was dropped. Doc. 1, p. 5. She does not allege that these facts were known to the Golden Nugget employee who allegedly reported her arrest history to the LCPD officers.

## II.
## LAW & ANALYSIS

### A. *Legal Standards*

#### 1. *Rule 12(c)*

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." Because a Rule 12(b) motion must be filed before the answer, defendants' motions are untimely under Rule 12(b)(6) and may instead be construed as motions for judgment on the pleadings under Rule 12(c). *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). Accordingly, the court interprets these motions as filed under Rule 12(c) and reviews all pleadings in making its recommendation.

A motion for judgment on the pleadings permits a party to raise the defense of failure to state a claim upon which relief may be granted after the pleadings have closed. FED. R. CIV. P. 12(c). It is "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam)). Such motions are thus decided under the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Accordingly, to survive such a motion the plaintiff must also "plead 'enough facts to state a claim to relief that is plausible on its face.'" *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)). However, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). The motion

should only be granted if "the plaintiff would not be entitled to relief under any set of facts that he could prove consistent with the complaint." *Id.*

### 2. Pleading standards

Pleadings are generally held to the minimal standards of Federal Rule of Civil Procedure 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where, however, a plaintiff sues a state actor in his individual capacity under § 1983, he is subject to a heightened pleading standard and "must plead 'with factual detail and particularity, not mere conclusory allegations.'" *O'Dwyer v. Nelson*, 310 Fed. App'x 741, 746 (5th Cir. 2009) (quoting *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)). Likewise, a plaintiff asserting a conspiracy claim under a civil rights statute "must plead the operative facts upon which [his] claim is based." *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987).

Through 42 U.S.C. § 1983, Congress provides a damages remedy for plaintiffs whose constitutional rights are violated by state officials. *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1854 (2017). For a private individual to be held liable under § 1983, the plaintiff must show that he "was a 'willful participant in joint activity with the State or its agents'" by alleging (1) an agreement between the private and public defendants to commit an illegal act and (2) a resulting deprivation of constitutional rights. *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004) (quoting *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)).

### B. Application

#### 1. Golden Nugget defendants' motion

The Golden Nugget defendants allege, in relevant part, that plaintiff fails to state a claim (1) under federal civil rights law because she has not alleged a constitutional violation and (2)

-4-

under state tort law because her allegations do not meet the minimum pleading standards of Rule 8, supra. Doc. 7, att. 1.

Sinegal alleges that defendants are liable to her under 42 U.S.C. § 1983.[3] Doc. 1, p. 18, ¶ 15. As mentioned above, a private individual may be held liable under § 1983 when he conspires with a state actor to deprive another of his constitutional rights and such a deprivation results. *Priester*, 354 F.3d at 420. Sinegal does not allege any facts suggesting an agreement between the Golden Nugget defendants and the LCPD defendants. The Golden Nugget defendants' only apparent involvement in the alleged abuses committed by the LCPD defendants was to call LCPD to the premises, and this was done with Sinegal's admitted agreement in hopes that the officers would "put some clarity on the situation." Doc. 1, pp. 3–4. Accordingly, she cannot show that the Golden Nugget defendants are liable for any civil rights violation and these claims must be dismissed.

As for the tort claims, Sinegal generally asserts claims of negligence, assault, battery, negligent and intentional infliction of emotional distress, and, perplexingly, murder.[4] *Id.* at 18, ¶ 16. She alleges that the Golden Nugget defendants are liable for defendant Ewing's actions under a theory of *respondeat superior* and negligent hiring, for negligent training and supervision over their security guards, and for failing to prevent the beating and arrest of Sinegal. *Id.* at 16–17, ¶ 8.

---

[3] Sinegal also mentions 42 U.S.C. § 1985, which create a separate cause of action for various conspiracies to interfere with civil rights by (1) preventing an officer from performing his duties, (2) obstructing justice, or (3) depriving a person of equal protection of the laws/equal privileges and immunities under the laws; and § 1986, which creates a cause of action against those who, by their negligence, fail to prevent a deprivation resulting from a conspiracy under § 1985. *See* doc. 1, p. 18, ¶ 15. Sinegal's allegations do not mention any interference with judicial process or prevention of a state actor from performing his duties, nor does she allege that she was treated differently from any class of individuals or denied any privilege or immunity. To the extent she intended to raise a claim under these statutes, she fails to do so.

[4] In her factual background, Sinegal also alleges that Golden Nugget improperly retaliated against her for reporting the casino to state authorities, made her a gambling addict by mailing her advertisements and special offers, and improperly accused her of trespassing. *See* doc. 1, pp. 3–14. However, she does not connect these allegations to any of the tort claims raised in her petition.

She also alleges that Golden Nugget is liable for Bellard's actions under a theory of *respondeat superior*. *Id.* at 18, ¶ 14.

Louisiana law provides for liability under the doctrine of *respondeat superior* only where there is an employer/employee relationship between the tortfeasor and defendant. *Buras v. Lirette*, 704 So.2d 980, 983 (La. Ct. App. 4th Cir. 1997). Likewise, a defendant cannot be held liable for the negligent hiring, supervision, or training of an individual it did not employ or otherwise supervise. *Young v. Marsh*, 86 So.3d 42, 50–51 (La. Ct. App. 2d Cir. 2012). Sinegal states that Ewing and Jackson were employees of the LCPD, not Golden Nugget, and does not allege that Golden Nugget had any responsibility for their supervision. Accordingly, the Golden Nugget defendants cannot be held liable for their actions under either theory alleged.

As for the other tort claims, the Golden Nugget defendants maintain that Sinegal cannot assert any claim for damages based on a "murder" because none of her allegations support such a claim. This is correct. The Golden Nugget defendants also maintain that Sinegal's claims against them generally fail to meet the standards described under Rule 8, supra.

Sinegal only identifies one Golden Nugget employee as potentially responsible for her injuries: Mallory Bellard. From the allegations, Bellard could only be liable for her alleged failure to intervene and prevent or shorten the encounter between the officers and Sinegal. Under Louisiana law, there is generally no duty to protect others from the criminal activities of third parties. *Lamkin v. Kenny's Key West, Inc.*, 791 So.2d 769, 774 (La. Ct. App. 4th Cir. 2001). However, a security guard must exercise reasonable care for the safety of the business's patrons and breaches that duty "when his actions cause an escalation in the risk of harm." *Posecai v. Wal-Mart Stores, Inc.*, 752 So.2d 762, 769 n. 7 (La. 1999) (citing *Harris v. Pizza Hut of La., Inc.*, 455 So.2d 1364 (La. 1984)). In *Pizza Hut*, the Louisiana Supreme Court found that Pizza Hut assumed

liability to protect its patrons from armed robbery when it hired a nighttime armed security guard after being robbed or burglarized several times. 455 So.2d at 1368–72. Thus Pizza Hut was liable for the security guard's negligence in carrying out these protective responsibilities, after two customers of the restaurant were shot by an armed robber who entered the restaurant while the security guard was on duty but sitting down to eat. *Id.* at 1366–67, 1371–72.

Assuming *arguendo* that Golden Nugget did assume a duty to protect patrons from third party criminal activity by employing security guards, the court can find no basis in the allegations for assuming that it also assumed a duty to temper the zeal of law enforcement officers called to its casino to handle situations beyond private security personnel's capabilities. Sinegal can show no liability on Bellard's or Golden Nugget's part based on Bellard's or any other Golden Nugget employee's failure to stop the alleged use of excessive force by LCPD officers, inform the officers of any knowledge she had of Sinegal's alleged pre-existing conditions or arrest history, or raise Sinegal's assertion that she had never been served with papers informing her that she was banned from the casino. Sinegal thus fails to state a claim against the Golden Nugget defendants under civil rights or tort law, and the Golden Nugget defendants' Motion to Dismiss must be granted.

### 2. *Municipal defendants' motion*

The municipal defendants also move for dismissal based on Sinegal's failure to state a claim on which relief may be granted, asserting (1) that the LCPD is not a proper party under Louisiana law, (2) that Sinegal fails to raise any specific allegations against LCPD Police Chief Don Dixon or Corporal Princeton Jackson, and (3) that Sinegal fails to allege a specific constitutional violation by any defendant.[5] Doc. 12, att. 1.

#### a. *Claims against LCPD, Dixon, and Jackson*

---

[5] Although municipal defendants asserted various defenses in their answer [doc. 11], they do not move for dismissal of plaintiffs' claims on any of these grounds. Therefore the court does not consider them under this motion.

According to Rule 17(b) of the Federal Rules of Civil Procedure, Louisiana law governs whether defendants can be sued in this court. Under Louisiana law, an entity must qualify as a "juridical person," which is defined as "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24. Police departments are generally not juridical entities and the proper defendant is instead the municipality. *Durall v. Lafayette Police Dept.*, 2011 WL 6181387 at *1 n. 1 (W.D. La. Nov. 16, 2011); *Evans v. City of Homer*, 2007 WL 2710792 at *4–*5 (W.D. La. Sep. 12, 2007). Accordingly, Sinegal shows no right to relief in her claims against the LCPD.

Even if Sinegal were to amend her complaint and substitute the city as a defendant, she has not made any specific allegations against the LCPD nor any allegations at all against Dixon. Instead, she only asserts that the LCPD and Ewing are both liable for the alleged use of excessive force, failing to prevent same, displaying deliberate indifference to her serious medical needs, and conspiring to effect the assault and cover up the evidence. Doc. 1, pp. 15–16, ¶ 7. Sinegal does not assert that the officers' employer would be liable under state law based on a theory of *respondeat superior* or negligent hiring, training, or supervision. As for her § 1983 claims, she does not allege any facts pointing to a conspiracy between Ewing and his employer. Furthermore, *respondeat superior* does not create a basis for liability under § 1983 and a supervisory official may only be held liable if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (internal quotations omitted). Sinegal's failure to allege personal involvement by the officers' employer or any unconstitutional policy leading to the alleged assault is fatal to her attempt to assert claims for a constitutional violation against anyone but the officers at the scene.

As for defendants' assertion that there is no claim against Jackson, Sinegal has neglected to list Jackson in either the description of defendants or the claims asserted against Ewing and the LCPD. *See* doc. 1, pp. 1–2, 15–16. However, she did make a handwritten addition to the caption to insert Jackson's name and has alleged (1) that he erased video from her cell phone and (2) that both officers participated in the arrest by hitting her in the stomach and shoving her. Doc. 1, pp. 1, 6. Accordingly, the complaint provides sufficient information for the court to analyze the claims against both Jackson and Ewing.

### b. Section 1983 claims

A police officer may be liable under § 1983 for a Fourth Amendment violation if he uses excessive force in arresting the plaintiff. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). To maintain such a claim, a plaintiff must show that (1) she was seized and (2) suffered an injury (3) that resulted directly and exclusively from defendant's use of force that was objectively unreasonable and excessive to the needs of the situation. *Id.* (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)). With Sinegal's allegations accepted as true for the purposes of this motion, she has alleged sufficient facts to satisfy the elements of an excessive force claim against both defendants. Accordingly, the motion should be denied as to Sinegal's excessive force claims against Jackson and Ewing.

Sinegal also asserts a claim of deliberate indifference to her serious medical needs. Deliberate indifference to a prisoner's serious medical needs by prison officials violates the Eighth Amendment's prohibition on cruel and unusual punishment. *Estelle v. Gamble*, 97 S.Ct. 285, 290–91 (1976). The Eighth Amendment thus requires that prison officials "ensure that inmates receive adequate medical care" and avoid the "unnecessary and wanton infliction of pain" against inmates. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (cleaned up). Deliberate indifference to a

pretrial detainee's serious medical needs is also actionable under the procedural and substantive due process guarantees of the Fourteenth Amendment. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525–26 (5th Cir. 1999). This is because "the State's incarceration of pretrial detainees . . . comports with due process guarantees" and "brings with it a responsibility under the U.S. Constitution to tend to essentials of their well-being." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 638–39 (5th Cir. 1996). For episodic acts or omissions, the plaintiff must show that the official "acted or failed to act with deliberate indifference to the detainee's needs." *Id.* at 647–48.

Sinegal does not allege that she was detained by police in any manner or at any place other than their temporary restraint of her at the casino. She also admits that an ambulance was called and does not complain of any delay. Doc. 1, p. 14. Instead, she states that she "politely refused their services" after the paramedics assumed she had a mental illness and took herself home and then to a hospital. *Id.* Leaving aside the question of whether Jackson and Ewing assumed any constitutional responsibility for Sinegal's medical needs when they temporarily restrained her, Sinegal cannot show deliberate indifference where medical assistance was procured and she refused it. *See Stephens v. Scott*, 244 Fed. App'x 603, 606 (5th Cir. 2007) (arrestee's claim of deliberate indifference failed where record showed that he was treated within three hours of his encounter with police). Accordingly, this claim must be dismissed.

Sinegal also asserts that the officers are liable to her for false arrest and false imprisonment. Doc. 1, pp. 15–16. To prevail on such a claim, she must show that the officers did not have probable cause to arrest her. *Haggerty v. Tex. Southern Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect has committed or is committing an offense." *Id.* (internal quotations omitted). Here Sinegal

has alleged that Bellard informed the officers of her six-month ban from Golden Nugget, and that she was refusing to leave because she maintained that the ban was improper and that she had not been given notice of it. Louisiana's criminal trespass statute only requires that the defendant has entered or remained on the property of another after being forbidden, either orally or in writing. *See* La. Rev. Stat. § 14:63.3(A)(1). It does not place any restrictions on a business's ability to institute a ban against a patron. The fact that Sinegal remained after being informed of the ban, even if she only learned of it that night, is sufficient to show probable cause that she committed an offense. Accordingly, she cannot maintain a claim for false arrest against the officers[6] and likewise cannot show any liability on the part of the Golden Nugget defendants for these actions under Louisiana tort law or § 1983.

Finally, Sinegal asserts that Jackson erased video from her cell phone and that both officers turned off their body cameras during the alleged assault. Doc. 1, pp. 4–6. She does not assert a basis for liability for these allegations under state tort law but asserts that the defendants are liable under § 1983 for "[c]onspiring to and in fact covering up the facts and circumstances surrounding the beating, false arrest and false imprisonment of Petitioner." *Id.* at 15–16.

A cover-up or destruction of evidence by a state actor might amount to a violation of the First Amendment if it results in a denial of the plaintiff's effective and meaningful access to the courts. *LaBarbara v. Angel*, 95 F.Supp.2d 656, 664–65 (E.D. Tex. 2000). However, Sinegal has not claimed that the alleged erasure of video or interference with body cameras prevented her from instituting suit and no claim is being rejected at this stage based on her inability to access such videos. Accordingly, these allegations do not support an independent claim for relief under § 1983.

---

[6] To the extent that Sinegal also intended to raise this claim in tort, Louisiana law provides that false arrest and imprisonment occur only "when one arrests and restrains another against his will without a warrant or other statutory authority." *Parker v. Town of Woodworth*, 86 So.3d 141, 144 (La. Ct. App. 3d Cir. 2012) (internal quotations omitted). Given the probable cause established above, Sinegal cannot show that officers lacked the authority to arrest her.

### c. *Tort claims*

Sinegal's allegations support her assault and battery claims against Jackson and Ewing. Under Louisiana law, battery is a harmful or offensive contact with a person. *Doss v. Morris*, 86 Fed. App'x 25, 27–28 (5th Cir. 2004) (citing *Lowrey v. Pettit*, 737 So.2d 213, 216 (La. Ct. App. 2d Cir. 1999)). "To establish battery, the plaintiff need not prove malice or an intent to inflict actual damage; a showing that the actor intended to inflict an offensive contact without the other's consent is sufficient." *Id.* at 28. Under Louisiana tort and criminal law, "[a]ssault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." *Hanna v. Shell Expl. and Prod., Inc.*, 234 So.3d 179, 195–96 (La. Ct. App. 4th Cir. 2017) (citing La. Rev. Stat. § 14:36). "Excessive force [in effecting an arrest] transforms ordinarily protected use of force into an actionable battery, rendering the defendant officer . . . liable for damages." *Penn v. St. Tammany Par. Sheriff's Office*, 952 So.2d 874, 878 (La. Ct. App. 3d Cir. 2007). Sinegal's allegations that she was restrained with undue force and that the officers also punched her in the stomach while arresting her is sufficient to state claims of assault and battery under Louisiana law. Accordingly, the Motion to Dismiss should be denied as to these claims against Jackson and Ewing.

Finally, Sinegal brings claims for negligent and intentional infliction of emotional distress. To recover for infliction of emotional distress under Louisiana law, a plaintiff must show, inter alia, that the complained-of conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Kador v. City of New Roads*, 2011 WL 1326641, at *10–*11 (M.D. La. Apr. 5, 2011) (quoting *White v. Monsanto Co.* 585 So.2d 1205, 1209 (La. 1991)). Conduct does not meet this standard merely because it is tortious or illegal. *Nicholas v. Allstate Ins. Co.*, 765

So.2d 1017, 1025–26 (La. 2000); *compare Kador*, 2011 WL 1326641 at *10–*11 (no extreme or outrageous conduct based on allegations that arresting officers brutally grabbed plaintiff, slammed her against a car, and deliberately single-locked the handcuffs to cause further injury) *with Thomas v. Frederick*, 766 F.Supp. 540 (W.D. La. 1991) (defendant liable for intentional infliction of emotional distress where he brutally arrested political rival's wife and daughter and then gave false testimony against them, which resulted in the plaintiffs being convicted of various offenses and serving 15 days in jail). While the facts alleged do not reflect well on the officers involved, Sinegal's apparently brief encounter with them and their alleged conduct in subduing her do not establish the sort of extreme and outrageous conduct required to support a separate claim for infliction of emotional distress. Accordingly, the motion should be granted as to this claim.

### III.
#### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Golden Nugget defendants' Motion to Dismiss [doc. 7] be **GRANTED** and that all claims against defendants Mallory Bellard and Golden Nugget, LLC be **DISMISSED WITH PREJUDICE** under Federal Rule of Civil Procedure 12(c). It is also **RECOMMENDED** that the municipal defendants' Motion to Dismiss [doc. 12] be **GRANTED IN PART** and **DENIED IN PART**, with all claims against the LCPD and Don Dixon, as well as all claims against defendants Jackson and Ewing with the exception of the assault and battery claims under Louisiana tort law and the § 1983 excessive force claims, being **DISMISSED WITH PREJUDICE** under Rule 12(c).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and

Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

      THUS DONE this 27th day of December, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE